UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE BLACK,

    Plaintiff,

v.                                            Case No. 1:15-cv-1230
                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                            /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for child's insurance benefits.

Plaintiff was previously found eligible for disability insurance benefits (DIB) and supplemental security income (SSI). PageID.40. In a hearing decision dated February 23, 2004, Administrative Law Judge (ALJ) William E. Decker found plaintiff disabled as of October 15, 2001. PageID.40, 113-118. At that time, plaintiff was 25 years old. PageID.42. The present case involves plaintiff's January 8, 2013 application for child's insurance benefits, based upon both her mother's and her father's accounts. PageID.40. In this application, plaintiff alleged a disability beginning March 31, 1998, one month prior to attainment of age 22. *Id.* In addressing this new claim, ALJ Luke A. Brennan stated that:

> The issue is whether the claimant is disabled under section 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

> impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> As required by section 202(d) of the Social Security Act, to be entitled to child's insurance benefits, the claimant must have a disability that began before attainment of age 22.

PageID.40. ALJ Brennan further explained that, "[u]nder the authority of the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22 (20 CFR 404.350(a)(5)).[1]

Plaintiff alleged a disability onset date of March 31, 1998 (about two weeks before her 22nd birthday) with alleged disabling conditions of major depression, substance abuse, borderline personality disorder, and attention deficit hyperactivity disorder (ADHD). PageID.233, 238. ALJ Brennan reviewed plaintiff's claim *de novo* and entered a decision denying benefits on April 16, 2014. PageID.40-51. While ALJ Brennan found that plaintiff was disabled within the meaning of the Social Security Act since age 25 (2001), she was not disabled under the Act prior to attaining age 22 (1998). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

---

[1] The cited regulation, 20 C.F.R.§ 404.350(a)(5), provides that "You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if . . .(5) . . . you are 18 years old or older and have a disability that began before you became 22 years old[.]"

2

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

3

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not attained the age of 22 as of the alleged disability onset date of March 31, 1998, and that she has not engaged in substantial gainful activity since that date. PageID.42. Second, the ALJ found that prior to attaining age 22, plaintiff had severe impairments of depression and dysthymic disorder. PageID.42. At the third step, the ALJ found that prior to attaining age 22, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

The ALJ decided at the fourth step that:

> prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to simple routine tasks involving no more than simple short instruction [sic] and simple work-related decision [sic] with few workplace changes.

PageID.44. The ALJ also found that in 1996, the only year in which plaintiff had earnings consistent with substantial gainful activity, she worked for five different employers with total earnings of $6,645.06. PageID.49. Because "none of these jobs were performed for a significant amount of time," the ALJ found that plaintiff had no past relevant work. *Id*.

At the fifth step, the ALJ determined that plaintiff could perform unskilled work at all exertional levels in the national economy. PageID.50. Representative occupations in the regional economy (Michigan) for a person with plaintiff's residual functional capacity (RFC) included: grocery stocker (12,000 jobs); dishwasher (7,000 jobs); and hand packager (9,000 jobs). *Id.* Accordingly, the ALJ determined that based on the application for child's insurance benefits,

5

plaintiff was not disabled as defined in the Social Security Act prior to April 13, 1998, the date she attained age 22.  PageID.50-51.

### III.  DISCUSSION

Plaintiff raised the following issue on appeal:

**Does the ALJ's decision fail to specifically weigh plaintiff's credibility and give specific reasons for how it weighs her credibility, requiring a remand for a new hearing?**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has stated that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility."  *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).  Nevertheless, an ALJ's credibility determination must be reasonable and supported by substantial evidence.  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ's decision examined plaintiff's medical history prior to age 22 in detail, which included three notable incidents. The first incident was plaintiff's suicide attempt at age 17. At that time, claimant reported that she became increasingly suicidal, wrote a suicide note, drank excessively, drove out in her car, took about 200 Ibuprofen tablets, superficially cut her wrists, and then drove herself to the emergency room for treatment. PageID.45. Plaintiff had engaged in three months of outpatient therapy in the year before her attempt, but she did not have a history of use of psychotropic medications or a previous inpatient stay for mental health problems. *Id*. The record reflects that she was admitted to the hospital on September 28, 1993 and discharged from Forest View Psychiatric Hospital on October 8, 1993. PageID.635. The ALJ addressed the opinion of a hospital physician, Jack N. Carr, M.D.:

> Dr. Jack Carr reported the claimant's socialization patterns had been somewhat disrupted by the frequent moves she had made over a lifetime, but the claimant reported getting along well with peers, seeing herself as being more mature than her average age peers, feeling more comfortable in relating to older peers, and being involved in a romantic relationship with a 20-year-old male. She acknowledged depressed mood, but denied suicidal ideation and became more resistive and argumentative when confronted with the seriousness of the attempt and her denial of the same. Dr. Carr offered admission diagnoses of adjustment disorder with mixed disturbance of emotions and conduct; and borderline personality trait disturbance. He reported that at the time of admission she was functioning in the 11 to 20 range on the GAF scale, had been functioning in the 41-50 range over the previous several months, and had been fluctuating between the 41-50 range to the 51-60 range over the past year. On discharge, he offered diagnosis of dysthymia and noted she was significantly improved, was no longer experiencing any suicidal ideation, and seemed free from any risk of recurrent self-harm. He noted that prognosis was good[.]

PageID.45.

The second incident occurred about 1 1/2 years later on April 5, 1995, when plaintiff was 18 years old (shortly before her 19th birthday). On that date, plaintiff was seen at the Fayette

7

County Memorial Hospital in Washington Courthouse, Ohio, with a complaint of depression, suicidal ideation, and alcohol abuse. PageID.46. With respect to this admission,

> She reported having three prior attempts and numerous ER visits and hospitalizations; having been seen by numerous therapists and psychiatrist; previously being prescribed Lithium, Zoloft, Anafranil, Prozac, and Paxil; and being taken off Prozac and Anafranil two weeks previously. She was noted to be extremely manipulative and continuously externalizing her problems on others. She was referred to a crisis counselor from Paint Valley and had a previously scheduled appointment with Dr. Stinson of Psychiatry. She was discharged after evaluation by the president of the department (Exhibit B2F pp. 64-72).

PageID.46.

A third incident occurred about two years later on March 1, 1997, when plaintiff was 20 years old:

> The claimant was seen by the Fayette County Life Squad on March 1, 1997 (at age 20), after being distraught over a relationship with her boyfriend, drinking, taking an unknown amount of Effexor and Depakote, and backing into a building. She was noted to be fully oriented. She was taken to Fayette County Memorial Hospital with acute lethargy with acute intoxication, involuntarily voiding, and incontinence of feces and with acute alcohol ingestion. She was examined by Dr. Dennis Mesker, who offered diagnoses of drug overdose, alcohol intoxication, and suicidal ideation and admitted the claimant to the Intensive Care Unit for observation and suicide precautions. He noted the claimant was unable to be evaluated by Mental Health at that time as she was quite intoxicated. The claimant was seen by a counselor and related much frustration with the way her life had been going, admitted to alcohol and cocaine abuse, and reported being frustrated that everyone was trying to control her life. Richard Walsh, the social worker, reported no signs of chemical addiction, but the claimant did report a history of overdose attempts. She agreed to follow up with her counselor after her court appearance for DUI charge and to not harm herself. The social worker recommended she see a substance abuse counselor and offered diagnosis of major depression. The claimant was discharged the following day on Ativan as needed and referred to Dr. Stinson at the Fayette Country MHC (Exhibit B2F pp. 4-55).

PageID.46.

In October and November, 1998, about six months after her 22nd birthday, plaintiff had three incidents.

> Subsequent to attainment of age 22, the claimant was seen for outpatient assessment by Marcy Bacheller, B.S., R.S.W. (a mental health clinician at Newaygo County Mental Health on October 14, 1998. The claimant reported not feeling in control of her impulses, feeling a lot of anxiety, having a poor appetite, having restless sleep, having been diagnosed with bipolar disorder in the past, seeing someone at PRESTO due to alcohol abuse, being referred to Hope Treatment Center where she was refused treatment until she was treated for the bipolar disorder, and having a history of overdosing and suicidal attempts. She reported having a rough summer, breaking up with someone, having an abortion, getting back together with her old boyfriend, and being arrested for drunk and disorderly conduct. She reported being on several different medications in the past, but not staying on any long enough to evaluate the effects and not following through with treatment after her hospitalizations. She reported abusing cocaine in the past and alcohol more recently. At that time, she was living at the home of her boyfriend's parents and stated her [boyfriend's] family was supportive and her parents did not want to help her financially anymore. She was to be seen in court later than day for the drunk and disorderly charge. On mental status examination, the claimant was noted to be very subdued, tearful at times, and very cooperative and talkative; having somewhat flat and depressed mood and affect; having clear thought processes; being fully oriented; having intact memory; being of average intelligence, and having good judgment. She reported being worried about her ability to control her impulses and not being suicidal. The clinician offered diagnosis of bipolar I disorder (based on the claimant's report of earlier diagnosis), most recent episode mixed, and assigned a global assessment of functioning (GAF) of 50, indicative of moderate symptoms and moderate difficulty in social, occupational or school functioning, as set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM). She was found to be eligible for six months of "CSM" (Exhibit B4F pp. 11-13).

PageID.46-47.[2]

---

[2] This report described plaintiff's "current living situation, independent living skills as follows:

> She currently lives at the home of her boyfriends [sic] parents. She does not plan to stay long feeling this is not good for their relationship. She states his parents are supportive of this at this time because they know her family is not supportive. Her parents do not want to help her out financially anymore.

PageID.396.

> About two weeks later, plaintiff was admitted to a hospital.

>> [T]he claimant was also admitted to New Focus at Gerber Memorial Health Services for three days beginning October 27, 1998, alleging feeling quite suicidal and planning to overdose. She was seen by Dr. Matheson for history and physical, was continued on Depakote, and was started on Revia and Celexa, which she tolerated without side effects. She participated in individual therapy, psychotherapy, and activity milieu therapy; her mood gradually improved; her depression decreased; and she was sleeping and eating better. She was discharged in a fairly stable condition and was to follow up in the community mental health center. Diagnoses were depression, chronic, recurrent; rule out bipolar affective disorder; and alcohol abuse; and her GAF on discharge was 50 (Exhibit p. 2).

PageID.47.

> Plaintiff was seen in an emergency room the next month.

>> [T]he claimant was also seen in the ER at Gerber Memorial Health Services on November 23, 1998, with possible overdose and depression with suicidal ideation after being kicked out of her boyfriend's mother's house, being depressed, drinking heavily, and taking Darvocet (initially reporting taking 2-4 pills and later stated she took 24 Darvocet). She was lavaged and given charcoal with Sorbitol. Provisional diagnoses included depression with suicidal ideation, Darvocet overdose, and alcohol intoxication with testing of 237. She was monitored until her ETOH level was reduced to 117 and released. She was referred for ongoing alcohol rehabilitation with FROST (Exhibit B3F).

*Id*.

The ALJ noted that because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, he considered the seven factors listed 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in evaluating plaintiff's credibility:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your

> back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.927(c)(3).

With respect to plaintiff's daily activities, the ALJ found that prior to attainment of age 22, plaintiff graduated from high school, completed one year of college, and moved to Ohio to stay with a friend because she was not happy living with her parents. PageID.48.

> She testified that she worked for Perry Ellis straightening clothes for three weeks but did not like the job. She also stated her personal life was not good at that time. She testified that she worked at a factory in 1997, which ended because she had a hard time with the work environment and the monotony and had a hard time working with a lot of different people. She testified that she had several jobs each year because of her relationships and missing too much work. She testified that, when she was afraid someone was going to leave her, she could not concentrate on work. This testimony is actually consistent with the medical evidence of record which demonstrates a dependence on her boyfriend (Exhibit B13F p. 6) and her inability to concentrate when she is at work but worried about her boyfriend; for example, her testimony that she was taken to hospital after an overdose and intoxication when she thought her boyfriend was with someone else. This accounts for the inability to focus or concentrate. When the claimant attained age 22, she was living with her parents. She had a variety of short-term jobs.

PageID.48.

With respect to the location, duration, frequency, and intensity of the claimant's pain or other symptoms, the ALJ found that "as a 17-year old girl, she felt despondent and admitted to cutting her wrists and taking an unknown quantity of Ibuprofen." PageID.48.

In reviewing factors that precipitate and aggravate the symptoms, the ALJ found, "[t]he record establishes that the claimant has not been compliant with treatment, would stop taking her medications, and would not follow through with recommended therapy." PageID.48.

With respect to the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, the ALJ found that plaintiff's testimony regarding her medications included those prescribed to treat her condition after age 22:

> The claimant testified that she had been prescribed various medications, including Wellbutrin, Effexor, Lyrica, Haldol, Trazodone, Prilosec and Nproxen; however, some, but not all, of these medications were prescribed during the relevant period prior to attainment of age 22.

PageID.48.

In reviewing the treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms, the ALJ found that plaintiff's testimony with regarding her treatment prior to age 22 was not supported by the record:

> The claimant testified that she was not seeking treatment prior to age 22 because she was unaware of what was available. Though [sic], this testimony is not consistent with the fact that she had been accessing mental health treatment since at least the age of 17. She also alleged electric convulsive treatment in 2012 and memory loss as a result; however, this treatment was not done prior to attainment of age 22.

PageID.48.

In reviewing any measures, other than treatment, the claimant uses or has used to relieve her pain or other symptoms, the ALJ noted that "[t]he claimant reported having electroconvulsive treatment at Pine Rest in 2012 and claims to have memory loss as a result; however, this was years after attainment of age 22." PageID.48-49.

Finally, the ALJ did not list any additional factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms, citing Social Security Ruling (SSR) 96-7p ("Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"), 1996 WL 374186 (July 2, 1996). Page ID.49.

The ALJ made the following finding with respect to plaintiff's credibility:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant's allegations of disabling impairment are not found to be fully credible. The mental status evaluation at the time of the September 1993 hospitalization showed poor insight, judgment and spontaneity, but good social interaction with peers.

\*   \*   \*

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted and that the residual functional capacity finding in this case is justified.

PageID.47, 49.

In her brief, plaintiff does not contest the ALJ's method for evaluating her credibility, but contends: that while the ALJ's decision never explains the reason for saying that plaintiff is not fully credible; that the decision does not make clear what weight it is giving to plaintiff's statements; and, that the decision does not identify the reasons for the weight assigned. Plaintiff's Brief at PageID.847.[3]

The relevant ruling, SSR 96-7p, provides in pertinent part:

In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be

---

[3] In responding to plaintiff's brief, defendant refers to the "March 2013 hearing testimony." Defendant's Brief at PageID.853. This is an erroneous reference, because the administrative hearing in this action took place on January 21, 2014. PageID.56. However, this appears to be a typographical error because defendant citations match the 2014 transcript.

believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

* * *

In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. For example, an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms; i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged. Conversely, an adjudicator may find credible an individual's statement that symptoms limit his or her ability to concentrate, but find that the limitation is greater than that stated by the individual.

SSR 96-7p, 1996 WL 374186 at *4 (July 2, 1996).[4]

Based on this record, the Court concludes that the ALJ appropriately evaluated plaintiff's credibility. At the administrative hearing, the ALJ allowed plaintiff's counsel to examine plaintiff and elicit all evidence which counsel felt was relevant to her claim. PageID.66-89. The ALJ observed plaintiff, reviewed her records, and provided a lengthy evaluation of her credibility. As discussed, the ALJ pointed out inconsistencies indicating that plaintiff was not a credible witness. In this regard, the Court notes that plaintiff stated that her memory was "significantly affected" by the 2012 electroconvulsive treatment, and that "I really get confused about dates and time periods."

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006)

PageID.67.  When asked if she noticed "a definite loss of memory" from the treatment, plaintiff stated "Terrible, yeah." PageID.86-87.  Such statements admitting to memory loss call into question the accuracy of plaintiff's testimony, especially in a case like this, in which plaintiff is being asked to testify regarding her mental condition and impairments as they existed on a number of dates between 1993 and 1998, a time period which includes events which occurred more than 20 years before the administrative hearing.

Based on this record, the ALJ's finding that plaintiff's allegation that she had a disabling impairment prior to age 22 was not fully credible was reasonable and supported by substantial evidence.  Accordingly, plaintiff's claim of error will be denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 28, 2017                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge